UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CRIMINAL ACTION NO. 3:15-CR-00054-JHM

UNITED STATES OF AMERICA                                                        PLAINTIFF

v.

CLAUDIA LOPEZ,
OSKEL LEZCANO,
ARIEL BORREGO HERNANDEZ,
SERGIO BETANCOURT,                                                              DEFENDANTS
LEDINSON CHAVEZ, and
YURIESKY DIAZ RODRIGUEZ

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two motions in limine by defendants Claudia Lopez (DN 240) and Ledinson Chavez. (DN 246.) These matters are ripe for decision.

The second superseding indictment charges all defendants with conspiracy to commit health care fraud and conspiracy to commit money laundering, while also charging some defendants individually with health care fraud, money laundering, and aggravated identity theft. (DN 207.) The defendants are alleged to have operated various chiropractic clinics and fraudulently billed health insurers for injections that were never administered by the clinics. (*Id.*) Lopez has moved to exclude evidence that she allegedly purchased or was in possession of two stolen vehicles during the conspiracy. (DN 240.) Chavez joins in that motion and also seeks to exclude any evidence related to three other matters: that the defendants purchased and sold expensive vehicles, largely with cash, during the conspiracy; that the defendants engaged in patient recruiting to attract business to the clinics; and that he left the United States around the time that he was indicted and search warrants were executed in this case. (DN 246.) The Court will address each in turn.

## I. EVIDENCE THAT VEHICLES WERE STOLEN

Lopez seeks to exclude evidence of her alleged ownership and possession of stolen vehicles, as this is inadmissible as a prior bad act under Fed. R. Evid. 404(b). This evidence is outlined in the government's pretrial memorandum. (*See* DN 235, at 6.) The government concedes that the stolen nature of the vehicles is not relevant and states that it will not seek admission of that evidence at trial. (DN 251.) Therefore, the government will not be permitted to introduce evidence regarding the stolen nature of the vehicles.

## II. EVIDENCE OF VEHICLE PURCHASES

In addition to joining the motion to exclude evidence that Lopez's vehicles were stolen, Chavez seeks to exclude evidence that the defendants purchased or drove expensive vehicles, as the information is irrelevant and unduly prejudicial. The government has indicated that it will seek to introduce the following evidence regarding vehicle transactions:

> (1) Lopez purchased a Porsche for $74,000 in cash from an individual who listed the vehicle on Craigslist;
>
> (2) Lopez purchased an Audi from a dealership for $24,000 in cash and later sold the vehicle to an individual for $28,000 in cash;
>
> (3) Chavez purchased a Mercedes for $37,125 from a dealership, putting $15,000 down in cash, which was provided by Lezcano, and listing his employer on his credit application as one of the companies that fraudulently billed for injections;
>
> (4) Betancourt purchased a Mercedes for $39,344.78 from a dealership, putting $5,000 down in cash and listing his employer on his credit application as one of the companies that fraudulently billed for injections;
>
> (5) Diaz purchased a Mercedes for $33,797.59 from a dealership, putting $5,000 down in cash and listing his employer on his credit application as one of the companies that fraudulently billed for injections; and

(6) Lezcano's girlfriend purchased a Porsche, BMW, and Mercedes from a dealership during the existence of the conspiracy.

(DN 252, at 3.) The government also seeks to introduce evidence surrounding an incident in which Chavez was involved in an accident while driving the Porsche belonging to Lopez, as the insurance company's investigation into the accident includes sworn testimony by Lopez that Chavez was her boyfriend and was driving the Porsche from Miami when the accident occurred. (*Id.* at 2.)

The Court will permit the introduction of the evidence related to vehicle purchases, as it is relevant to the money laundering charges. The defendants are charged with conspiracy to commit money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), which makes it a crime to conduct a financial transaction involving the proceeds of unlawful activity in order to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds[.]" If the defendants used ill-gotten gains from their health care fraud conspiracy to purchase expensive vehicles while paying largely in cash, these facts are relevant to proving that these transactions were done in order to conceal the money generated through the health care fraud conspiracy. *See United States v. Marshall*, 248 F.3d 525, 531 (6th Cir. 2001) (defendant's purchase of $7,000 watch, $2,000 bracelet, and $1,700 worth of wine formed basis of money laundering charge). The Sixth Circuit noted in *Marshall* that merely making such high-dollar purchases with unlawfully obtained funds will not support a money laundering conviction, as there must be further evidence of an intent to conceal. *Id.* at 538–42. But whether this evidence is relevant is a separate question than whether it is sufficient to sustain a conviction. The Court finds that the evidence of vehicle purchases is relevant to the money laundering charges under Fed. R. Evid. 401. Further, neither Chavez nor Lopez have indicated what unfair prejudice may result from the introduction of evidence surrounding these transactions, and the Court finds that

any such prejudice does not substantially outweigh the probative value of this evidence. *See* Fed. R. Evid. 403.

Further, the Court will not exclude the evidence that certain defendants listed the billing companies as their employers on financing documents. These admissions are relevant to the health care fraud charges, as they indicate that the defendants were involved with the companies that were at the center of the alleged scheme to bill for injections that were not administered. The Court also finds Lopez's statements to the insurance company to be relevant, as it demonstrates a connection between two defendants alleged to have been a part of multiple conspiracies. Thus, the Court will not exclude this evidence, as it is relevant and admissible under Fed. R. Evid. 401 and 403.

### III. EVIDENCE OF PATIENT RECRUITING

Chavez seeks to exclude evidence that the defendants recruited patients to the chiropractic clinics. He argues that this evidence is irrelevant to the health care fraud charges, as the clinics at issue obtained some clients through non-recruitment means, and some of the recruited patients still received legitimate treatment from the clinics. However, the Court will allow this evidence, as it is relevant to the conspiracy to commit health care fraud charge. If the defendants recruited patients in order to grow the pool of individuals for whom they could bill for injections that were never administered, then it would be evidence of the defendants taking steps in furtherance of the conspiracy and relevant to proving the charge. *See United States v. Shannon*, 803 F.3d 778, 781 (6th Cir. 2015) (considering evidence of patient recruitment within conspiracy to commit health care fraud). The fact that some of the clinics' patients were not recruited and that some of the recruited patients received legitimate medical care does not negate

4

the probative value of the alleged patient recruitment. Therefore, the Court finds the evidence of patient recruitment to be relevant.

Chavez also argues that this evidence is inadmissible under Fed. R. Evid. 404(b), as Kentucky regulations impose a duty upon chiropractors to ensure that their agents and employees are not compensating patients to induce the chiropractor-patient relationship. However, this is not prohibited 404(b) evidence. The government is not trying to prove that, because the defendants recruited patients in the past, they are of poor character and likely committed the other bad acts for which they have been charged. Nor is the government offering this evidence to prove motive, opportunity, intent, or any other permitted purpose under Fed. R. Evid. 404(b). Instead, the government offers this proof of patient recruitment as a part of the proof of the overall health care fraud conspiracy. By allegedly recruiting patients, the defendants acted in a way that helped to advance or achieve the goals of the conspiracy. This is intrinsic evidence that is inextricably intertwined with the evidence of a conspiracy to commit health care fraud. *United States v. Price*, 329 F.3d 903, 906 (6th Cir. 2003). Therefore, Rule 404(b) does not require the exclusion of this evidence.

Finally, Chavez argues that the evidence should be excluded under Fed. R. Evid. 403, as its potential to unfairly prejudice the defendants or confuse or mislead the jury substantially outweighs its probative value. However, the Court finds that this evidence is probative of the conspiracy charge, and any prejudice to the defendants is not unfair. Likewise, the Court does not believe the jury will be misled or confused by considering this evidence, as the patient recruitment is not a "collateral issue" as Chavez states but rather conduct that is relevant to the existence of the conspiracy. Therefore, the Court will not exclude this evidence.

## IV. EVIDENCE OF FLIGHT

Finally, Chavez seeks to exclude evidence that he left the United States shortly after an indictment was returned against him and search warrants were executed. An indictment was returned on June 2, 2015, and it was unsealed on June 17, 2015. (See DN 1, DN 14.) According to the government, search warrants in relation to this case were executed on June 16, 2015. On June 17, Lezcano and Betancourt were arrested in Miami. Chavez's Mercedes was found in Miami on June 22, the same day Chavez crossed the border and entered Mexico. He then flew from Monterrey, Mexico, to Panama City, Panama, before being arrested on September 25, 2015, while reentering the United States on a flight from Cuba. (DN 252, at 3–4.) Based on these alleged facts, the government has included an instruction on flight in its proposed jury instructions that reads as follows:

> (1) You have heard testimony that after the crime was supposed to have been committed, the defendant Ledinson Chavez fled the country.
>
> (2) If you believe that the defendant Ledinson Chavez fled the country, then you may consider this conduct, along with all the other evidence, in deciding whether the government has proved beyond a reasonable doubt that he committed the crime charged. This conduct may indicate that he thought he was guilty and was trying to avoid punishment. On the other hand, sometimes and innocent person may leave the country for some other reason. The defendant has no obligation to prove that he had an innocent reason for his conduct.

(DN 239, at 31.)

"Flight evidence comes in as an admission of guilt by conduct." *United States v. Oliver,* 397 F.3d 369, 376 (6th Cir. 2005) (quoting *United States v. Dillon,* 870 F.2d 1125, 1126 (6th Cir. 1989). "Courts, however, have 'consistently doubted the probative value in criminal trials' of flight evidence." *Id.* (quoting *Wong Sun v. United States,* 371 U.S. 471, 483 n. 10 (1963)). The

probative value of flight evidence generally "depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of crime charged." *United States v. Atchley*, 474 F.3d 840, 853 (6th Cir. 2007) (citations omitted). "[A] flight instruction is improper unless the evidence is sufficient to furnish reasonable support for all four of the necessary inferences." *United States v. Wilson*, 385 F. App'x 497, 501 (6th Cir. 2010) (citations omitted).

The Court will not decide this matter at this time. Prior to this testimony being introduced at trial, the Court will hear further argument from counsel, and decide then whether to exclude the testimony or not.

### V. Conclusion

Therefore, for the reasons stated above, **IT IS HEREBY ORDERED** that defendant Claudia Lopez's motion in limine (DN 240) is **GRANTED**, and defendant Ledinson Chavez's motion in limine (DN 246) is **GRANTED IN PART** and **DENIED IN PART**.

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

February 16, 2018

cc: counsel of record